**United States District Court**
**District of Nebraska**

| | |
|---|---|
| **Robbin and Melvin Harrison, guardians and conservators on behalf of Tyler Harrison, an Incompetent;**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Casey Bang, in his individual capacity,**<br><br>**Defendant.** | **Case No. CI**<br><br>**Complaint and Request for Jury Trial (42 USC §1983)** |

**Parties and Jurisdiction**

1. Tyler Harrison (hereinafter, "Tyler") was born with Down's Syndrome. Though twenty-six years of age, his approximately level of functioning is that of a 7-year-old. He is non-verbal, able only to make sounds. His condition is obvious upon observation. See attached Exhibit A. Tyler does neither the authority nor the capacity to litigate on his own behalf.[1]

2. Robbin and Melvin Harrison are the legally appointed co-guardians of Tyler after being appointed by a judge in Benton County, Arkansas and the Guardianship transferred with the approval of the Honorable Kurt Rager presiding in the County Court of Dakota County, Nebraska. Their Letters of Guardianship for a Ward are attached

[1] Under Nebraska law, minors and incompetents are considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities. *Carlos H. v. Lindsay M.*, 283 Neb. 1004 (2012).

hereto as Exhibit B. They bring this action on Tyler's behalf as his guardians and as his next friend pursuant to Rule 17(c) *Fed.R.Civ.P*.

3. Upon information and belief, Casey Bang is a resident of Nebraska formerly employed as a deputy of the Burt County Sheriff. At all times relevant herein, Bang was in uniform and acted under color of law. He is sued in his individual capacity.

4. This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and alleges the deprivation of Tyler's constitution al rights. The Court exercises federal question jurisdiction pursuant to 28 USC §1331.

5. Venue is appropriate because all events occurred in the District of Nebraska.

**Facts**

6. At all times relevant, Plaintiffs and their son Tyler lived in a residential neighborhood in Decatur, Nebraska.

7. On September 5, 2022, during daytime hours, Harrison's neighbor reported that Tyler was looking in her windows or attempting to enter her home. Officers, including Bang, were dispatched.

8. Upon arrival, Bang observed Tyler in the backyard area behind Tyler's home and the home of his neighbors.

9. Tyler was dressed only in his white jockey-style underwear. His appearance was as depicted in Exhibit A, a photograph taken by Robbin Harrison later that day.

10. Tyler was holding a broomstick, that is, a broom handle that was not attached to its broom.

11. Tyler was holding the broomstick high and waiving it around over his head. He may have struck a car with it. His actions were consistent with pretending to be in an action cartoon.

12. Tyler's behavior did not indicate he had been in any kind of conflict with another person or that he had threatened or assaulted another person with the broomstick.

13. After Bang confronted Tyler, Tyler eventually surrendered possession of the broomstick by throwing it away from him.

14. After he released the broomstick, it was obvious to Bang that Tyler not only suffered from Down's syndrome, but also that Tyler was unarmed.

15. While confronting Tyler, Bang fired a taser at him three times. Two of the taser activations were successful, that is, both taser darts struck Tyler, embedded in his skin, and thereby activated an electrical current that stunned, confused, disabled and caused Tyler fall and suffer pain and fear.

16. As a result of being tased, Tyler fell into an area covered with white rock and became covered with rock dust and dirt. He urinated his underwear and cried.

17. Officers handcuffed Tyler and directed him to sit on a railroad tie. Tyler sat on the tie in his underwear, still crying, until he was transported to a local hospital, alone, without his parent(s).

18. While confronting Tyler, no officer, including Bang, made any effort to approach Tyler's home to determine if a guardian or caregiver could deescalate the encounter or otherwise help.

**First Claim – Excessive Force**
**(42 USC §1983)**

19. Plaintiffs incorporate the foregoing allegations.

20. No objective circumstances observed by Bang indicated Tyler presented a threat of harm to the officers or others. Tyler was not in a dispute with anyone. He had not harmed anyone. He had not aggressively threatened anyone. He was not armed with a dangerous weapon. He had not brandished the broomstick in a manner creating a serious or immediate threat to officers, or to anyone, present. At all times, Tyler presented as a low functioning person dressed only in his underwear.

21. It was obvious Tyler suffered from a developmental disorder and was non-verbal. A reasonable officer would have interpreted his conduct in a manner consistent with his developmental disorder.

22. By twice successfully tasing Tyler, Bang employed an amount of force that was objectively reasonable, in violation of Tyler's rights under the Fourth Amendment of the United States Constitution.

23. As a result of Bang's use of force, Tyler suffered physical pain and physical injury, including a blackened eye and injuries to his legs, wrist, hand and stomach. Attending paramedics necessarily removed the darts that were imbedded in his skin, causing more pain.

24. As a result of Bang's use of force, Tyler suffered emotional harm, including confusion, anxiety, fear, stress and duress. Still four years later, Tyler continues to suffer anxiety and emotional harm resulting from the incident, as demonstrated by his agitated

behavior and non-verbal expressions of pain or frustration upon observation of any law-enforcement officer.

**Second Claim – Disability Discrimination**
**(Title II – ADA)**

25. Plaintiffs incorporate the foregoing allegations.

26. Bang was deliberately indifferent to Tyler's disability.

27. Bang failed to take account for or take any measures to accommodate Tyler's disability before tasing him.

28. Bank did not effort to contact Tyler's father, who was home when the foregoing events occurred, would have responded to a knock on the door, and could have helped avoid using a taser.

29. Due to his deliberate indifference, Bang misperceived and failed to understand that any conduct of Tyler relied upon to justify his use of force resulted from the effects of his disability.

30. As a result of Bang's deliberate indifference, Tyler suffered greater indignity and injury than non-disabled individuals confronted by police.

31. As a result of Bang's deliberate indifference, Tyler suffered economic loss, physical injury and emotional harm as alleged above herein.

**Relief**

32. Plaintiffs pray for the following relief:

a. Economic damages for medical expense in an amount to be proven at trial.

b. Non-economic compensatory damages for Tyler's physical and mental pain and suffering in an amount to be proven at trial and determined by the jury;

c. Compensatory damages for violation of Tyler's constitutional rights;

d. Attorney fees pursuant to 42 U.S.C. §1988;

e. The costs of this action and such other and further relief as the Court deems equitable and proper.

**Request for Jury Trial**

Plaintiff requests trial by jury of all claims alleged herein.

ROBBIN AND MELVIN HARRISON,
On behalf of TYLER HARRISON, Plaintiffs

By: /s/ *Adam J. Sipple,* #20557
**SIPPLE LAW**
12020 Shamrock Plaza
Suite 200
Omaha, NE 68154
402.778-5055
adam@sipple.law
*Attorney for Plaintiffs*



EXHIBIT A

| Nebraska State Court Form<br>REQUIRED<br><br>CC 16:2.3.1 Revised 10/18<br>Neb. Ct. R. § 6-1443 (C) - (F) | **LETTERS OF GUARDIANSHIP FOR A WARD** | |
|---|---|---|

IN THE COUNTY COURT OF Dakota COUNTY, NEBRASKA

IN THE MATTER OF THE GUARDIANSHIP OF

Tyler P. Harrison
Ward

FILED
STATE OF NEBRASKA
DAKOTA COUNTY
JUL 31 2019
CLERK OF DAKOTA COUNTY COURT

Case No. ______________________

**LETTERS OF GUARDIANSHIP FOR A WARD**

TO: Robbin Harrison and Melvin Harrison
Guardian

The court finds you are qualified and you are appointed as the guardian of

Tyler P. Harrison.

You are authorized and empowered to perform the duties and responsibilities of guardian as required by law, subject to the following limitation of powers until you shall be discharged according to law.

The court finds clear and convincing evidence that:

X A full guardianship is necessary and is the least restrictive alternative. **The guardian is granted all powers conferred upon guardians by law as follow:**

i. Selecting the ward's/incapacitated person's place of abode within this state or, with court permission, outside of this state;
ii. Arranging for medical care for the ward/incapacitated person;
iii. Protecting the personal effects of the ward/incapacitated person;
iv. Giving necessary consent, approval, or releases on behalf of the ward/incapacitated person;
v. Arranging for training, education, or other habilitating services appropriate for the ward/incapacitated person;
vi. Applying for private or governmental benefits to which the ward/incapacitated person may be entitled;
vii. Instituting proceedings to compel any person under a duty to support the ward/incapacitated person or to pay sums for the welfare of the ward/incapacitated person to perform such duty, if no conservator has been appointed;
viii. Entering into contractual arrangements on behalf of the ward/incapacitated person, if no conservator has been appointed;
ix. Receiving money and tangible property deliverable to the ward/incapacitated person and applying such money and property to the ward's/incapacitated person's expenses for room and board, medical care, personal effects, training, education, and habilitating services, if no



000272014C70

EXHIBIT B

conservator has been appointed, or requesting the conservator to expend the ward's/incapacitated person's estate by payment to third persons to meet such expenses.and

x. Other:

______________________________________________
______________________________________________
______________________________________________

______This is a limited guardianship. You, as guardian, shall have the following authorities and responsibilities as checked below (acting together with the ward/incapacitated person or individually):

- ☐ Selecting the ward's/incapacitated person's place of abode within this state or, with court permission, outside of this state;
- ☐ Arranging for medical care for the ward/incapacitated person;
- ☐ Protecting the personal effects of the ward/incapacitated person;
- ☐ Giving necessary consent, approval, or releases on behalf of the ward/incapacitated person;
- ☐ Arranging for training, education, or other habilitating services appropriate for the ward/incapacitated person;
- ☐ Applying for private or governmental benefits to which the ward/incapacitated person may be entitled;
- ☐ Instituting proceedings to compel any person under a duty to support the ward/incapacitated person or to pay sums for the welfare of the ward/incapacitated person to perform such duty, if no conservator has been appointed;
- ☐ Entering into contractual arrangements on behalf of the ward/incapacitated person, if no conservator has been appointed; and
- ☐ Receiving money and tangible property deliverable to the ward/incapacitated person and applying such money and property to the ward's/incapacitated person's expenses for room and board, medical care, personal effects, training, education, and habilitating services, if no conservator has been appointed, or requesting the conservator to expend the ward's/incapacitated person's estate by payment to third persons to meet such expenses.
- ☐ Other:

______________________________________________
______________________________________________
______________________________________________

**LIMITATIONS OF POWER**:

- **You shall <u>not</u> pay compensation to yourself or your attorney from assets or income of your ward/incapacitated person, nor sell real property of the estate without first giving notice to interested persons and obtaining an order of the court. The order may be entered without a hearing if all interested persons have waived notice of hearing or have executed their written consent to the fee.**

- **You shall not make ATM withdrawals or receive cash back on debit transactions without a court order. The Office of Public Guardian is prohibited from making ATM withdrawals or receiving cash back on debit transactions.**
- **Other restrictions:** ______________________________

You are directed to:

- If you are authorized to handle any of the ward's/incapacitated person's assets, give a copy of these Letters to all financial institutions where the ward/incapacitated person has an account/assets. You must file with the court an Acknowledgment of Financial Institution form along with a Personal and Financial Information for Guardianships and Conservatorships form with full account numbers.

- If you are authorized to handle any of the ward's/incapacitated person's assets, file with the court a Notice of Newly Discovered Asset form within 30 days of becoming aware of additional assets, gifts, awards, settlements, or inheritances over $500.00 not disclosed in the current inventory. You must also file with the court a Certificate of Mailing showing you mailed the Notice of Newly Discovered Asset form by first class mail, postage pre-paid, to all interested persons along with a Notice of Right to Object form.

- File a copy of the Letters of Guardianship with the Register of Deeds in any county where the ward/incapacitated person has real property or an interest in real property.

- File a Condition of Ward Report, an Updated Inventory, a complete accounting of your administration of the ward's/incapacitated person's money, assets, possessions or income (including social security or other benefits), if you have possession of such, along with the required fee, bank statements and/or brokerage statements for the accounting period with personal information (social security number, date of birth, etc.) blacked out, Notice of Right to Object form, and a Certificate of Mailing showing copies were sent to all interested-persons, including the bonding company, by first-class mail, postage prepaid, not later than 30 days after the expiration of one year after the date of these Letters and annually thereafter. If you are filing an accounting, the accounting shall include Certificates of Proof of Possession for all money, assets, possessions or income (including social security or other benefits) existing at the end of the accounting period.

DATE: July 31, 2019

BY THE COURT: Kurt T. Rager (SEAL)
County Judge

COUNTY COURT ... COUNTY, NEBRASKA